**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARISOL PITRE,

            **Plaintiff,**

-vs-                                          Case No. 6:13-cv-1130-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

            **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action *pro se* pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) finding medical improvement and cessation of her benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memorandum submitted by the Commissioner and the letter brief submitted by Plaintiff. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

In a determination dated January 29, 2003, Plaintiff was found disabled as of February 23, 2001. R. 9. On July 28, 2010, the Social Security Administration determined Plaintiff was no longer disabled as of July 1, 2010. R. 9, 105-06. The determination was upheld upon reconsideration. R.

126-30, 131-34. Plaintiff requested a hearing, (R. 138) but subsequently waived her right to appear and testify. R. 171. A hearing was held on November 30, 2011, before Administrative Law Judge Kelley Fitzgerald (hereinafter referred to as "ALJ"). R. 21-26. In a decision dated January 26, 2012, the ALJ found Plaintiff's disability ended on July 1, 2010 and she had not become disabled again since that date. R. 14. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on June 4, 2013. R. 1-3. Plaintiff filed this action for judicial review on July 25, 2013. Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was 39 years old at the time of the ALJ decision in January 2012. R. 15, 193. She completed 11th grade, and can read and understand English. R. 179, 186. She last worked as a school bus monitor. R. 24, 129, 133, 247, 249, 335. The most recent favorable decision finding Plaintiff disabled is the decision dated January 29, 2003 (R. 10), which is known as the "comparison point decision" or CPD. R. 10. At the time of the CPD, Plaintiff had medically determinable impairments of adjustment reaction with anxiety, personality disorder, disorder of the neck, and disorder of the back. R. 10. As of July 1, 2010, the ALJ found Plaintiff had medically determinable impairments including: disorders of the spine, hypertension, gastro esophageal reflux disease ("GERD"), asthma, carpal tunnel syndrome ("CTS"), possible borderline intellectual functioning, affective disorder, and anxiety related disorder. R. 10-11. The ALJ found that since July 1, 2010, Plaintiff had not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed impairment. R. 11; *see* 20 C.F.R. Part 404, Subpt P, App'x 1. The ALJ also found medical improvement had occurred as of July 1, 2010 (R. 11) because the impairments present at the time of the CPD had decreased in medical severity to the point Plaintiff had the residual functional capacity (RFC) to perform a light unskilled work. R. 11. The ALJ found Plaintiff's medical improvement related to the ability to work because it resulted in an increase in Plaintiff's RFC (*i.e.*,

she became less restricted). R. 11. The ALJ also found that beginning July 1, 2010, Plaintiff continued to have severe impairments, and but she had the RFC to perform a restricted range of light work except she was limited to no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, and she should avoid climbing ladders, ropes, and scaffolds, concentrated exposure to hazards, including machinery, heights, and pulmonary irritants. The ALJ also limited Plaintiff to "simple, routine, repetitive tasks." R. 12. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform her past relevant work as a school bus monitor, her disability ended on July 1, 2010, and she had not become disabled agin since that date. R. 14.

Plaintiff now asserts the ALJ's decision was in error. Plaintiff's hand-written brief reads, in total:

> I am writing this notice to let u know I do not agree with the last decion on my case. I am disable. I have a lot of medical problems and I am under medications. On the last decion they based it on that I was better and not suffering from my conditions. That is not correct. I've been under treatments and also attending therapy. I suffer from anxiety bipolar major depression panic attack and others. Everything is in my records. My condition the worst. I am on medications daily that at time make me feel worst.
>
> I am asking to review my case and consider that reality the first decion was not correct. They could have not based desion on my records. I am not better or was that is not true I also have other medical problems and take other medications for. Please review my records and serious health problems. I did not ever wish for this or for me to get sick. Things happened in life u cannot control them. I was told by phone to write a letter addressing it to the judge of why I disagree with the last decion.

Doc. 26 (mistakes in original).

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *Crawford v. Commissioner*, 363 F.3d 1155, 1158 (11th Cir. 2004), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Crawford,* 363 F.3d at 1158; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citations omitted).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (quotations omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## III.   ISSUES AND ANALYSIS

A claimant's continued entitlement to disability benefits must be reviewed periodically. 20 C.F.R. § 404.1594(a). The Commissioner may terminate a claimant's benefits upon finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). To determine whether disability should be terminated, the Commissioner conducts a multi-step evaluation process to determine:

(1) Whether the claimant is engaging in substantial gainful activity;

> (2) If not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;
>
> (3) If impairments do not meet a listing, whether there has been medical improvement;
>
> (4) If there has been improvement, whether the improvement is related to the claimant's ability to do work;
>
> (5) If there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;
>
> (6) If medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;
>
> (7) If the claimant has a severe impairment, whether the claimant can perform past relevant work; and
>
> (8) If the claimant cannot perform past relevant work, whether the claimant can perform other work.

See 20 C.F.R. § 404.1594(f).

Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he] w[as] disabled." 20 C.F.R. § 404.1594(b)(1). To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir.1985); *see* 20 C.F.R. § 404.1594(c)(1). To terminate benefits, the Commissioner may not focus only on new evidence concerning disability, but must also evaluate the evidence upon which the claimant was originally found to be disabled. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). Without a comparison of the old and new evidence, there can be no adequate finding of improvement. *Id.*

**A. Plaintiff's Physical Impairments**

Plaintiff contends that she has not experienced medical improvement and her overall medical condition remains unchanged, although her letter brief merely refers to mental health problems for which she takes medication and does not specifically mention any physical problems. Doc. 26 (listing anxiety, bipolar, major depression, and panic attacks). Plaintiff also told a SSA employee according to notes in the Record that "everything is the same it is mostly her mental problems." R. 412. Nevertheless, because Plaintiff listed physical problems of back pains, asthma, and carpal tunnel syndrome in her applications to the SSA, the Court will address the ALJ's findings regarding these conditions. R. 180, 196, 201.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ determined that as of July 1, 2010, Plaintiff had the following physical impairments: disorders of the spine, hypertension, gastroesophageal reflux disease ("GERD"), asthma, carpal tunnel syndrome ("CTS"). R. 10-11. The ALJ also determined that Plaintiff had the physical residual functional capacity to perform a restricted range of light work. The ALJ addressed Plaintiff's physical limitations as follows:

> As for the claimant's GERD, her gastroenterologist advised her to avoid certain foods, take medication, and avoid eating 3-4 hours before she goes to bed. As for the claimant's other physical conditions, including CTS, asthma, and back problems, the claimant's treatment has been conservative. It was noted in her primary care physician's treatment notes that the claimant also reported anxiety and that she had not been herself and was reclusive. However, the examiner, either the physician or the physician's assistant, noted that he or she had personally seen the claimant out in public shopping and acting normally.
>
> A consultative examination with Donna Lester, M.D. in May 2010 revealed a normal physical examination with the exception of reported pain in her back and the inability to squat fully. Dr. Lester noted that the claimant's asthma and GERD were well controlled and required minimal treatment. Dr. Lester further noted that the claimant did not appear to have any physical limitations from an orthopedic standpoint such as sitting, lifting, and carrying.
>
> Physicians contracted for by the State Agency reviewed the evidence and offered their expert opinion that despite the claimant's medically determined impairments, she retained the physical ability to perform the exertional demands of at least "light" work as that term is defined in the regulations . . . . The opinions of these reviewing doctors have been carefully reviewed and their "expert opinion evidence" has been considered in accordance with SSR 96-6p. In this instance, these opinions are given significant weight for several reasons. First, these are disability specialists who had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case. They considered all of the objective facts at the time they rendered their opinion. Secondly, though they did not have at their disposal the claimant's testimony, that testimony, specifically as it relates to the claimant's activities of daily living, was consistent with the residual functional capacity opined by the reviewing doctors to a significant degree. Finally, the evidence in total does support in general the conclusions put forth by the State Agency doctors. The evidence is part of the record and entitled to the same probative value accorded "expert opinion" evidence.
>
> In sum, the above residual functional capacity assessment is supported by Drs. Lester and Graham's findings/opinions, which are given great weight as they are consistent with the other evidence of record, the objective evidence of record, and the State Agency physicians' findings.

R. 13.

The ALJ accurately described Plaintiff treatment for GERD and her other physical conditions, including CTS, asthma, and back problems, which the ALJ noted had been conservative. R. 13, 279-89, 291-315, 378-82, 415, 418. The ALJ also properly relied upon the May 2010 consultative examination by Dr. Lester who reported a normal physical examination with the exception of reported

pain in her back and the inability to squat fully; Dr. Lester noted Plaintiff's asthma and GERD were well controlled and required minimal treatment, and she did not appear to have any physical limitations from an orthopedic standpoint such as sitting, lifting, and carrying. R. 13, 343. In addition, the ALJ was entitled to rely on the opinions of the state agency reviewing physicians, who opined that Plaintiff retained the physical ability to perform light work. The ALJ's decision, to the extent it determined Plaintiff retained the physical ability to perform the exertional demands of at least "light" work, was based on substantial evidence.

### B. Plaintiff's mental impairments

Plaintiff argues that her mental health issues have not medically improved and she is still receiving treatment and attending therapy for anxiety, bipolar disorder, major depression, and panic attacks, as reflected in her records. Doc. 26. She is also on daily medications that "make her feel worse" presumably because of side effects. Doc. 26.

The Commissioner argues that Plaintiff fails to cite any record facts, regulations or case law, and develops no meaningful argument in support of her claim of error. Because it is Plaintiff's burden to establish her disability, the Commissioner argues, her general and unsupported arguments amount to a waiver of or abandonment of the issues on appeal. Doc. 27 (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 (11th Cir. 1989) (when a party elaborates no arguments on the merits of an issue, the issue is deemed waived); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.")). However, as the Commissioner acknowledges, although the Court reviews the Commissioner's factual findings with deference, the Court is to review the Commissioner's legal conclusions with "close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Despite regulations requiring the ALJ to determine if "medical improvement" occurred by comparing the medical evidence supporting the most recent favorable decision with new medical evidence[1] the ALJ does not discuss anything about Plaintiff's original condition as of the comparison point decision date ("CPD"), January 29, 2003, such that the Court could review whether the ALJ's decision that "medical improvement" occurred is based on substantial evidence. The ALJ listed, without any elaboration, the following severe impairments as of the CPD date: adjustment reaction with anxiety, personality disorder, disorder of the neck, and disorder of the back. R. 10. However, there is little discussion of the basis for the "medical improvement" of Plaintiff's previous mental health impairments compared to her 2010 impairments in the appropriate section of the Decision. Instead, the ALJ focuses exclusively on Plaintiff's condition as of July 1, 2010, which the ALJ is not allowed to do under the SSA regulations:

> The medical evidence supports a finding that, as of July 1, 2010, there has been a decrease in medical severity of the impairments present at the time of the CPD. The claimant's treatment has been limited and conservative. It appears that she presents for medications management and has not always been compliant with prescribed treatment for her mental health impairments. The evidence revealed essentially normal findings on her mental status examinations. No hospitalizations are noted.

R. 11.

Within the official Record, SSA internal notes indicate: "There is no support for the allowance on file although there is PPCS input and medical from CPD. . . . It appears there was a psych allowance rendered based on DIG code 2960 (affective D/O). . . . The CE on file lends to not severe impairments or no functionally restrictive impairments. . . . Mental allowance for an affective disorder." R. 370. The lack of any discussion by the ALJ of Plaintiff's most recent favorable condition – her mental health impairments or "affective disorder" found to be disabling at the time of the CPD in January 2003–is at the very least problematic as the basis for determining that she has

---

[1] *See McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir.1985); *see* 20 C.F.R. § 404.1594(c)(1).

shown "medical improvement." *See Halloran v. Colvin*, 964 F.Supp.2d 609, 613 (E.D. La. 2013) (holding that the regulations preclude a finding of medical improvement when the file upon which the claimant's most recent favorable determination of benefits was based cannot be found and is not reconstructed). In deciding whether to terminate benefits, the ALJ may not focus only on new evidence concerning disability but must also evaluate the evidence upon which the claimant was originally found to be disabled, and, without this comparison of the old and new evidence, there can be no adequate finding of improvement. *See Vaughn*, 727 F.2d at 1043. As such, the ALJ's decision which did not discuss Plaintiff's most favorable condition at the CPD was not based on substantial evidence.

The ALJ also erred in failing to follow the Eleventh Circuit's decision in *Richter v. Commissioner of Social Security*, which held that an ALJ could not generally account for a claimant's "moderate" mental impairments in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks or unskilled work *unless* the "medical evidence demonstrate[s] that a claimant retains the ability to engage in simple, routine, repetitive tasks or unskilled work despite deficiencies in concentration, persistence and pace" and then "these restriction sufficiently account for such deficiencies." 379 Fed. Appx. 959, 2010 WL 2017650 (11th Cir. May 21, 2010)[2]; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (restricting vocational expert's inquiry to simple, routine, repetitive tasks accounted for deficiencies of concentration, persistence, or pace where psychologist determined that claimant could perform such tasks without severe restrictions)). Generally, case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Pendley*

---

[2]Unpublished opinions of the Eleventh Circuit, constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

*v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Pendley*, 767 F.2d at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Hypothetical questions may adequately accounted for a claimant's deficiencies in concentration, persistence, and pace as long as they otherwise implicitly accounted for these deficiencies. *Richter,* 2010 WL 2017650 (citing *White v. Commissioner of Social Security,* 572 F.3d 272, 288 (6th Cir. 2009) and *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002)).

The ALJ discussed Plaintiff's mental impairments as of July 1, 2010 as follows:

The claimant alleges that her physical and mental health conditions present her from sustaining full time work. . . After considering the evidence of record, I find that the claimant's current medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the ex1ent they are inconsistent with the residual functional capacity assessment for the reasons explained below. The claimant can perform a wide array of activities of daily living and has received little treatment for her impairments. What little treatment she has had has been conservative.

The claimant was noted to be very dramatic and overstated the severity of her problems. The claimant reported that she was unable to remember things or count change. However, on her mental status examination, she was able to count well enough and reported that she reads her Bible, sews, and shops. The medical evidence of record indicates often non-compliance with mental health medications. As a result, it appears as though she often had some periods of instability with anxiety. However, her mental status examinations most months were within normal limits, especially the months she was compliant with her medication. There is no evidence of any psychiatric hospitalizations. GAFs ranged from 50-55 and her visits appear to brief visits for medication management. Dr. Canaan, her treating physician, wrote a letter in September 2010 indicating that the claimant was compliant with her medications for bipolar disorder. However, there are numerous notations indicating that the claimant stopped taking medications on her own accord. Stephanie Stovall, PA-C wrote a letter in November 2011 noting that the claimant was unable to work and had difficulty with activities of daily living because of her bipolar disorder and anxiety disorder as well as her social phobia. This is given little weight as it is not supported by the treatment records or documented limitations. It is even contradictory to a notation in this provider's treatment record that the claimant was seen in public shopping and acted normally.

> Malcolm Graham, Ph.D. performed a consultative examination in May 2010 and noted that the claimant lives alone with her two children, ages 9 and 11. It was noted that she worked as a bus assistant for 6 years (last worked in 2006), made jewelry, and sold clothes. The claimant reported that she helped her children with homework, shopped, watched movies, read her Bible, visited with family, and attended doctor's appointments weekly. *Her mental status examination revealed essentially normal findings with the exception of some errors noted in the area of concentration and memory.* Dr. Graham noted that this was likely related to her language problems and possible lowered intellectual functioning. Dr. Graham noted that the claimant had no behavioral indications of anxiety, depression, or thought disorder. The reports to Dr. Graham indicate a high level of functioning, especially given the claimant lives alone with her two children.

R. 12-13.

The report of Dr. Graham, to which the ALJ gave "great weight" as consistent with the other objective evidence of record, noted that Plaintiff had trouble on attention and concentration tasks, as well as recent memory tasks:

> During her evaluation, she appeared to have some trouble on attention and concentration tasks, but this is felt to be due to language problems and possible lowered intellectual functioning. She showed the same kind of difficulty on her recent memory tasks.

R. 337. Dr. Graham also diagnosed Plaintiff with "highly probably borderline intellectual functioning." As to the concentration and memory evaluation he performed, he opined:

> **Concentration**: She could count backward from twenty to one in 24 seconds without error. She could say the ABC's in 21 seconds with four errors and she left out the letters U, V and W. She could count forward by three's from one to forty in 42 seconds with six errors. She could recall three digits forward and two digits backward.
> \* \* \*
> Memory Recent and Remote: She could recall one out of four words after five minutes but her motivation on this task was felt to be questionable. She could remember having a chicken salad sandwich for supper the night before the evaluation, and could remember a recent news story about it going to "rain all next week." There were no problems noted in her recent or remote memory.

R. 336.

Despite the ALJ's recognition that there were "some errors noted in the area of concentration and memory" by Dr. Graham, the ALJ did not address or discuss Plaintiff's concentration and/or

-12-

attention limitations, except to add to the hypothetical to the VE a restriction to "simple, routine, repetitive tasks." R. 11. In addition, despite recognizing that state agency reviewing physicians' opinions that Plaintiff's psychiatric problems imposed "moderate" functional limitations (R.13), the ALJ failed to include in the hypothetical or the RFC these specific "moderate" limitations on Plaintiff's concentration, persistence, or pace; ability to maintain attention and concentration for extended periods; ability to remember instructions. R. 383, 397.

Here, Dr. Graham specifically identified Plaintiff's concentration and attention issues and the reviewing physicians opined Plaintiff had moderate limitations in concentration, persistence, or pace, yet neither the ALJ nor the Commissioner have pointed to medical evidence of record showing that Plaintiff could perform mental work related activities that were "simple, routine tasks." Because the ALJ chose to generally account for Plaintiff's acknowledged deficiencies in concentration, persistence, and pace by restricting the vocational expert's inquiry to simple, routine tasks even though there is no medical evidence demonstrating that Plaintiff retained the ability to engage in simple, routine tasks, the ALJ's decision was not based on substantial evidence and must be reversed and remanded.

On remand, the ALJ will also consider Plaintiff's testimony about the side effects of medication as alleged in the papers she filed in support of her claim (R. 197, 222, 225, 227, 235-36), and mentioned in her letter brief. **The Court highly recommends that Plaintiff attend her hearing in person and consider obtaining counsel to represent her at the hearing.** Further information on local legal representation from legal aid organizations that may be available at no cost to Plaintiff is available from the Social Security Administration.

### IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and**

**REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

   **DONE** and **ORDERED** in Orlando, Florida on July 14, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties